Argued 15 October, decided 17 December, 1907; rehearing denied March 10, 1908.

## DE ROBOAM v. SCHMIDTLIN.

92 Pac. 1082.

TRUSTS—RESULTING TRUSTS—PAYMENT OF CONSIDERATION FOR CONVEY-
ANCE TO ANOTHER.

1. As a general rule, where one person purchases real estate and pays the purchase price, but takes the deed in the name of another, a resulting trust arises by operation of law in favor of the one furnishing the purchase money.

SAME—EVIDENCE TO ESTABLISH—PAROL EVIDENCE.

2. Such a trust is exempt from the operation of the statute of frauds, and may be shown by parol.

SAME—RELATIONSHIP BETWEEN PARTIES—PRESUMPTIONS.

3. Where a deed is taken in the name of one whom the person paying the purchase money is under a legal or moral obligation to provide for, as a wife or child, the presumption is that the purchase was intended as an advance-ment or settlement, and not in trust for the person furnishing the money, and evidence to overcome this presumption must be of the most satisfactory kind.

SAME—TIME OF PAYMENT.

4. It is indispensable to the establishment of a trust that payment of the purchase price should actually be made by the person asserting the trust, or that a binding obligation therefor be incurred by him as part of the original transaction at or before the time of conveyance; payment at some subsequent time not being sufficient.

SAME—WEIGHT AND SUFFICIENCY OF EVIDENCE.

5. Evidence to establish a resulting trust must be clear and convincing, and when the testimony is in doubt, or the evidence conflicting, the legal title must prevail. Evidence examined and *held* insufficient to establish a result-ing trust in favor of a husband in land conveyed to his wife.

From Jackson: HIERO K. HANNA, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is a suit in equity filed by plaintiff to establish his title to certain real estate in Jackson County against the claim of defendant, Augustine Schmidtlin. On April 14, 1884, Jane Holt died intestate, leaving surviving her a husband, George W. Holt. At the time of her death she was the proprietor, and she and her husband were the owners by joint deed, of the United States Hotel in Jacksonville. This property was at the time encumbered by mortgages and judgment liens amount-ing to practically its full value. The plaintiff is a brother of Mrs. Holt, and came to Jackson County without means in 1871. The following year he married a Mrs. Schmidtlin, who owned and was living upon a farm near Jacksonville. He continued

to live on this farm with his wife until shortly after his sister's death, when they moved to Jacksonville, and took possession and management of the hotel. They had no property at that time except the farm. On June 14, 1884, plaintiff was appointed administrator of the estate of his sister on petition of her husband. Seven days later, and on the 21st of the same month, plaintiff and his wife executed and delivered to Louis Solomon a mortgage on her farm to secure the payment of their joint and several promissory note for $3,700. No money was borrowed by them of Solomon at the time, but on the day of the execution of the mortgage, and on the 23d day of June and the 2d of July, respectively, mortgages on the hotel property, given by Mrs. Holt and her husband to Reames Brothers for $1,614, Kubli for $977.59, and a judgment lien thereon in favor of Orth for $1,043.18, were assigned by the respective owners thereof to Solomon. On December 1, 1884, two prior mortgages on the same property, in favor of Jerry and Delia Nunan, respectively, were assigned by the owner to A. L. Reuter. Plaintiff continued to act as administrator of the estate of his sister until March 9, 1885, when he was removed by the county court for incompetency, and on April 25th following a suit was commenced by the attorneys of himself and wife in the name of Solomon to foreclose the Reames and Kubli mortgages, and for a decree for the sale of the hotel property to satisfy the amount due thereon, and on the Orth judgment. Plaintiff, as administrator of the estate of Mrs. Holt, G. W. Holt, her husband, Reuter, assignee of the Nunan mortgages, and plaintiff's wife, who was assignee of a mortgage in favor of Drum, were made defendants, and all acknowledged service of summons. On May 12, 1885, a decree of foreclosure was entered by default, and the hotel property ordered sold, subject to the two prior mortgages in favor of Nunan and which had been assigned to Reuter, to satisfy the amount due on the Reames and Kubli mortgages, the Orth judgment, and the mortgage in favor of plaintiff's wife. On the 16th an execution was issued on this decree under which

the property was, on June 20th, sold to plaintiff's wife for $4,325. No money was paid by her or any one else on this sale, except $74.30 for fees, costs and expenses of the sale. The amount purporting to be due on the Reames and Kubli mortgages and Orth judgment, amounting to $3,695.12, was satisfied by Solomon's receipt to the sheriff, and the amount of the Drum mortgage owned by Mrs. De Roboam was likewise satisfied by her receipt for $555.58. The attorney's fees amounting to $432 were subsequently paid by plaintiff and his wife. On the next day after the sale plaintiff and his wife executed and delivered to Solomon a mortgage on the hotel property to secure the payment of their promissory note for $3,700, made June 21, 1884, and secured by mortgage on Mrs. De Roboam's farm. On December 15, 1885, the interest and $1,700 on the principal was paid on the original mortgage to Solomon, and on the same day it was assigned by him to Reuter.

On April 2, 1886, a sheriff's deed to Mrs. De Roboam for the hotel property was filed for record, and on the same day she and her husband gave their joint note to Reuter for $4,000, secured by a mortgage on the hotel property and her farm, and Reuter satisfied of record the Nunan mortgage for $2,000, the other one for $500 having been satisfied by him on March 5th previously, and also satisfied the mortgage assigned to him by Solomon. Plaintiff and his wife continued thereafter to operate and manage the hotel until her death in October, 1900. About the time they took possession of the hotel, or soon thereafter, the plaintiff secured a contract from the county for keeping the poor. These people were kept on his wife's farm, and were fed from the hotel. "What I take out to throw away my cook fix it up nice and brought it to the poor with a buggy," says plaintiff. From the proceeds of this contract, the income from the hotel and a saloon annexed, payments were made from time to time on the Reuter mortgage, and it was finally paid and satisfied of record on April 5, 1888. Mrs. De Roboam left a will in which she devised the hotel property and furniture to plaintiff during his natural life, and at his death to her son,

Augustine Schmidtlin, the defendant in this suit.   In April, 1904, this suit was commenced for the purpose of charging the defendant, as trustee of the property in question, on the theory that plaintiff paid the consideration for the purchase thereof by his wife at the sale under the decree in the Solomon foreclosure suit, and that she took the title in trust for him.  Plaintiff had decree in the court below, and defendant appeals.

REVERSED.

For appellant there was a brief over the names of *James R. Neil* and *Watson & Beekman,* with an oral argument by *Mr. Edward B. Watson.*

For respondent there was a brief over the names of *Colvig & Durham,* with an oral argument by *Mr. Wm. M. Colvig.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

The legal title of the property in controversy passed to Mrs. De Roboam by her purchase at the foreclosure sale, and the subsequent execution and delivery to her of a sheriff's deed therefor.   She did not convey it during her lifetime.  *Prima facie* therefore the title passed to defendant under her will. Plaintiff insists, however, that the purchase was made by his wife for his benefit, and that he paid the purchase price, and the title taken in her name under an agreement, whereby a resulting trust was created in his favor.

1. The questions for decision therefore are, whose money paid for the property, and if it was paid for by plaintiff was the title taken in the name of his wife, under such circumstances as will rebut the presumption that it was intended as an advancement? As a general rule, where one person purchases real estate and pays the purchase price, but takes the deed in the name of another, a resulting trust arises by operation of law in favor of the one who furnished the purchase money.

2. The person in whose name the title is taken becomes a trustee for the one who paid the money, and the trust so created is exempt from the operation of statute of frauds and may be shown by parol.

3. But when the deed is taken in the name of one whom the person paying the purchase money is under a legal or moral obligation to provide for, as a wife or child, the presumption is that the purchase was intended as an advancement or settlement, and not in trust for the person furnishing the money. This presumption may be overcome by testimony, but to have that effect the evidence must be of the most convincing and satisfactory kind: *Parker* v. *Newitt,* 18 Or. 274 (23 Pac. 246); *Barger* v. *Barger,* 30 Or. 268 (47 Pac. 702). These principles are elementary, and it only remains to apply them to the fact as shown by the testimony.

All the parties to the several transactions out of which the controversy arose are dead, excepting plaintiff. He can neither read nor write, and is compelled to testify from an imperfect recollection of matters occurring 20 years ago. He says that he desired to purchase the property himself at the foreclosure sale, but was advised by his attorney that he could not do so because he was administrator of his sister's estate, although he had in fact been removed some months previous, of which, however, he claims to have been ignorant, and acting upon the advice of his counsel he requested his wife to bid the property in for him. He does not claim that he actually furnished any part of the purchase price, or was able to do so, but his contention is that before the sale he arranged with A. L. Reuter to furnish the money, and that Reuter did so, and that he subsequently repaid him. But in this it seems quite clear that his memory is at fault. The record shows that no money whatever was paid at the time of the sale, except a few dollars for costs, furnished, presumably, by the purchaser, Mrs. De Roboam. The claim of the execution creditor Solomon was satisfied by the mortgage given by Mrs. De Roboam on her separate property some months prior to the sale, and an additional mortgage to secure the same indebtedness on the hotel property made the day thereafter. This mortgage remained in the name of Solomon, and was not acquired by Reuter until December 15 following. It is therefore manifest that Reuter did not furnish

any money at the time of the sale with which to make the purchase, but that the purchase price was paid by Mrs. De Roboam, receipting to the sheriff for the amount due her on her mortgage and a note to Solomon secured by mortgages on her property.

4. There is evidence on behalf of plaintiff, which he claims tends to show that he subsequently paid the Solomon mortgage, and the other liens on the property. But these payments were made out of the proceeds of the business conducted by himself and wife, and there is much evidence tending to show that she was the head of the firm. But, however that may be, a subsequent payment by plaintiff of the indebtedness incurred by his wife for the purchase price of the property, would not be sufficient to create a resulting trust in favor of him. It is indispensable to the establishment of a trust that payment of the purchase price should actually be made by the person asserting the trust or a binding obligation therefor incurred by him as part of the original transaction at or before the time of conveyance. Payment at some subsequent time is not sufficient: Pomeroy, Eq. Juris. § 1037; *Sisemore* v. *Pelton,* 17 Or. 546 (21 Pac. 667) ; *Taylor* v. *Miles,* 19 Or. 550 (25 Pac. 143). The plaintiff does not claim that he entered into any binding obligation with Reuter at or before the purchase of the property by his wife to repay him the purchase money, but he expressly says that Reuter refused to loan him any money unless his wife would go security, and the record shows that his wife did not incur any liability to Reuter until April 2, 1886, after she had secured the sheriff's deed for the property.

5. In view of the rule that evidence to establish a resulting trust must be clear and convincing, and when the testimony is in doubt, or the evidence conflicting, the legal title must prevail (*Snider* v. *Johnson,* 25 Or. 328: 35 Pac. 846), we are of the opinion that plaintiff has failed to make out a case entitling him to relief in equity, and the decree of the court below must be reversed, and the complaint dismissed.        REVERSED.